## STAPLES *vs.* EMERY.

The manure on a farm in the possession of a tenant at will is liable, during the continuance of his tenancy, to be seized in execution and sold for the payment of his debts.

THIS was an action of trespass for taking and carrying away from the barn yard of the plaintiff, thirty cords of manure, in the month of *May,* 1828.

In a case stated by the parties, it was agreed that one *Elwell,* who was the owner of the farm from which the manure was taken, had mortgaged it to the plaintiff, who had entered for condition broken, in *August,* 1827. The farm, however, had for many years, and until *September,* 1830, been in the sole occupancy of *Elwell*

the mortgagor ; and the manure was taken under an execution against *Elwell*, committed to the defendant, as a constable, for collection.

*J.* and *E. Shepley*, for the plaintiff, relied on the case of *Lassel v. Reed*, 6 *Greenl.* 222, as conclusively showing that the manure, did not belong to the tenant, and could not be seized for his debt.

*J. Holmes*, for the defendant, distinguished this case from that of *Lassel v. Read*, and cited *Ricker v. Ham*, 14 *Mass.* 141.

MELLEN C. J. delivered the opinion of the Court at the ensuing *May* term, in *Cumberland*.

The only question decided in *Lassel v. Reed*, 6 *Greenl.* 222, was, that a tenant for one year, ending *April* 15, had no right to remove and convert to his own use, at or after the end of the lease, the manure made and accumulated on the premises during the continuance of the lease. In some peculiar respects the present action differs from that ; for in this it appears that before the manure in question was made, the plaintiff had entered under the mortgage for breach of the condition ; but it also appears that *Elwell*, the mortgagor, for many years before such entry, had been in possession of the land, and ever since the entry, which was in *August* 1827, had continued in possession, up to the time when the statement of facts was signed in *September*, 1830 ; and from this last fact we are to consider *Elwell*, during all that time, as a disseisor of *Staples*, or as a tenant at will under him ; but as a wrong is not to be presumed, and as none is alleged on his part, we ought to consider him, and so the plaintiff's counsel contends, as a tenant at will, liable to the uncertainties of such a tenancy, and entitled to its privileges ; liable to have the lease terminated at the pleasure of the lessor or owner, but entitled to emblements, if terminated unreasonably, according to well settled principles. It is important to attend to the reasoning of the court, which led to the decision, in the case of *Lassel v. Reed*. They say, " it is obviously true, as a general observation, that manure is essential on a farm ; and that such manure is the product of the stock kept on such farm, and relied upon as annually

to be applied to enrich the farm and render it productive. If at the end of the year, or of the term, when the lease is for more than a year, the tenant may lawfully remove the manure which has been accumulated, the consequence will be the impoverishment of the farm for the ensuing year ; or such a consequence must be prevented at an unexpected expense, occasioned by the conduct of the tenant ; or else the farm, destitute of manure, must be leased at a reduced rent or unprofitably occupied by the owner." In the case before us the above reasoning is inapplicable, because none of the contemplated consequences could follow. Suppose a tenant for five years, should, the second, third and fourth years sell all the manure and manage the land without any ; whose loss would it be ? He would be injuring himself, destroying his own profits to a certain extent, and rendering himself less able to pay his rent. Still, would he not have a right to proceed in this manner ? At least might he not convert it to his own use in this imprudent manner without being a trespasser, or the purchaser's being liable in an action of trespass or trover ? And has the owner any other remedy than an action for damages for bad husbandry and mismanagement of the farm ? In the case supposed, the manure is a part of the annual produce of the farm ; and, as such, belongs to the tenant ; and might be attached and sold on execution to satisfy the debts of such tenant, without rendering the officer or the creditor a trespasser. That is to say, a tenant, as in the case supposed, may injure himself and impair his own profits ; but the manure of the season next before the known term of the lease, is the produce of that season and designed for the use of the farm the following season, at which time the owner is to occupy or have the control of the land as in the abovementioned reported case. Now, all the observations made on this head apply to the lease at will in the case under consideration. *Elwell* was in possession, as tenant at will in *August*, 1827. The manure was made during the following winter, and the tenancy at will has never been determined ; of course, the rights of no one have been impaired, but *Elwell's* ; or rather the loss of profits by reason of the seizure and sale of the manure has been only his loss ; the same having been a part of the annual profits designed for his

own use and benefit, and which would have been so applied had not the sale prevented it. The hay and fodder cut on the land by *Elwell* in the summer of 1827, belonged to him as tenant, and that hay and that fodder were the materials of which the manure was composed, which is the subject of dispute, and which, had it not been taken and sold, would have increased his crops in 1828 ; and a similar alternation of profits and manure to increase them, probably occurred annually for two years, at least, afterwards ; for the facts before us do not show any interruption of the natural order observed in such business on a farm. On this view of the cause we think the plaintiff is not entitled to maintain this action. As we have before observed this case differs from *Lassel v. Reed,* and we do not mean to extend the principle of that decision beyond the peculiar facts, or to intimate any opinion as to the question whether manure, lying in heaps or yards, passes to the grantee by an absolute deed of land, where no mention is made of it as a subject of the conveyance. A nonsuit must be entered.